375 So.2d 162 (1979)
Succession of Oscar Shelby DEAN.
Palmer G. DEAN, Jr., Ronnie Dean and Mary Holland Dean Hartsell, Appellees,
v.
Mrs. Theo Tucker Holloway DEAN, Appellant.
No. 13890.
Court of Appeal of Louisiana, Second Circuit.
August 27, 1979.
Writ Refused October 26, 1979.
*163 Baker, Culpepper & Brunson by J. Michael McDonald, Jonesboro, for Mrs. Theo Tucker Holloway Dean.
James M. Dozier, Jr., Farmerville, for Palmer G. Dean, Jr., Ronnie Dean and Mary Holland Dean Hartsell.
Before BOLIN, PRICE and MARVIN, JJ.
MARVIN, Judge.
Besides adjudicating other disputes between the widow and the collateral heirs of an intestate decedent, the judgment below rejected the widow's claims that decedent's 50-acre farm was community property and that, whatever the legal character of the 50-acre farm, the decedent had promised her, or acknowledged that he owed her, 15 acres of the farm for her separate funds used to pay for and improve his separate property. Her alternative claim that community funds enhanced the separate property of decedent was also dismissed without prejudice. She appeals these parts of the judgment.
The judgment ordered decedent's separate estate to reimburse $1,000 to the widow's separate estate which the widow claimed was used to satisfy an indebtedness against the decedent's separate estate. In answer to the widow's appeal, the collateral heirs complain that the $1,000 reimbursement should not have been ordered and that the widow's claim of enhancement of the decedent's separate property by the community should have been dismissed with prejudice.

*164 SEPARATE OR COMMUNITY FARM?
Decedent acquired the farm in 1955, some five years before decedent's marriage, by deeds reciting a cash consideration. It is clearly decedent's separate property, even if we accept the widow's contention that it was "considered" as community property and that it was encumbered with a mortgage indebtedness which was paid in part with community funds. CC 2334.

THE PROMISE OF 15 ACRES?
This contention of the widow is based on a typewritten, unsigned draft of a dation en paiement prepared by a Farmerville attorney in January 1978. The dation purports to convey 15 acres of the farm to the widow as reimbursement for her separate funds used to enhance decedent's separate property. The only funds of a separate character shown to have been used to enhance decedent's separate estate is the $1,000 for which the widow was allowed reimbursement. The dation obviously can have no relevance to the widow's alternative claim that community funds were used to enhance decedent's separate estate.
An unsigned will written by a decedent has been construed and enforced as a written promise by that decedent to remunerate his sister-in-law for her services to the decedent. Succession of Freeman, 322 So.2d 154 (La.App. 1st Cir. 1975). The draft of the unsigned dation en paiement is not in decedent's handwriting. The draft was prepared in January 1978 and was in the possession of decedent until his death on March 24, 1978. He was not hospitalized until about March 10, and it is not shown that decedent was incapable of executing the draft before he was hospitalized, even should we assume that the draft was prepared at his direction and that decedent was incapable of executing it after he was hospitalized.[1] In the absence of a decedent's written promise to pay, or written acknowledgment of a debt, a debt against a decedent's estate may be proved by parol testimony and may be recognized only when the statutory requisites and burden of proof are met. LRS 13:3721-3722. Section 3722 requires the testimony of at least one witness other than the claiming creditor, and other corroborating circumstances to prove the debt. See Succession of Gesselly, 216 La. 731, 44 So.2d 838 (1950); Landry v. Weber, 345 So.2d 11 (La.1977).
The surveyor who prepared the description of the 15 acres contained in the dation draft testified that there was some discussion by the decedent that some part of the debt on the property had been paid for by the widow. The description, incidentally, was mailed to the widow and not to the decedent. The surveyor's testimony, however, generally corroborates the widow's testimony that she used $1,000 of her separate funds with her husband's knowledge to pay her husband's separate indebtedness and supports the result below. See Smith v. Garrison, 137 So.2d 505 (La.App. 3d Cir. 1962). The record does not support statements in the draft of the dation that the widow expended her separate funds to improve or enhance her husband's separate property. Compare the remedy under CC Arts. 2390, 2391 with that under CC 2408. See Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3d Cir. 1976).
Under these circumstances, the lower court correctly allowed the $1,000 reimbursement and correctly rejected the widow's separate claim against decedent's separate estate with respect to the 15 acres or its equivalent value. The dation does not refer to any "services" having been rendered to decedent by his widow, as erroneously suggested by the widow's counsel in brief, but refers only to the widow's expenditure of "funds".

*165 DISMISSAL WITH OR WITHOUT PREJUDICE?
The lower court concluded that the widow had established that a number of improvements were made to the farm with community funds after the marriage and that the widow may be in a position to comply with CC 2408 and to show the amount of enhancement value to separate property to which the community would be entitled. See Fontenot, supra. The trial court did not abuse its great discretion is dismissing this portion of the widow's claims without prejudice and as of non-suit. See comment (b), CCP 1671. See Fontenot, supra, at p. 901; Rapides S. & L. Assn. v. Lakeview Develop. Corp., 326 So.2d 511 (La. App. 3d Cir. 1976); Burgess v. Travelers Insurance Co., 254 So.2d 163 (La.App. 2d Cir. 1971). The collateral heirs suggest that the widow should be required to institute an action for this purpose within some reasonable time to avoid further protracting this litigation. We agree and will amend the judgment by adding to it the following paragraph:
Mrs. Theo Holloway Dean, as surviving widow in community, is allowed 180 calendar days from the date this opinion becomes final to institute the action under CC Art. 2408 against the Succession of her late husband, Oscar Shelby Dean. In the event the action is not instituted by that time, such claims shall be forever barred.
In answer to the appeal, the collateral heirs also seek damages for frivolous appeal because the judgment, as to the separate character of decedent's farm, is so "plainly and patently correct." Counsel for the appellant-widow acknowledges a "plethora" of authority against him on the separate character issue. In an obfuscatory argument, however, the widow's counsel attacks the "basic unfairness" of the result and contends that when the farm became unencumbered after the community was created by the marriage, the unencumbered asset became community property. Damages for frivolous appeal are not allowed.
As amended, and at the cost of appellant, judgment below is AFFIRMED.
NOTES
[1] The record indicates that the decedent was capable of executing the dation even after he was hospitalized. The widow testified that she discussed the dation with him in the hospital and he acknowledged that he had the dation in his bedside drawer at that time. Even if we assume the husband had the intention to "pay" her 15 acres in January, it would be speculative for us to say that he had that intention in February or March.